UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2009-189(WOB)

NICHOLE JOHNSON, ET AL.                    PLAINTIFFS

VS.                  MEMORANDUM OPINION
                        AND ORDER

DANNY MILES, ET AL.                        DEFENDANTS


This matter is before the court on defendant's motion for summary judgment. (Doc. 46) The court heard oral argument on this motion on July 28, 2011, after which it took the motion under submission.

The court now issues the following Memorandum Opinion and Order. For the reasons stated, the court concludes that defendant's motion should be granted.

*Factual Background*

Plaintiff Nichole Johnson ("Johnson") was employed at the Kenton County Clerk's office in Covington, Kentucky from May 2008 until her termination in November 2008. Plaintiff Bridget Feinauer ("Feinauer") began working at the clerk's office in 1997 and is still employed at its branch in Independence, Kentucky. Plaintiffs never worked together in the same office.

Defendant Rodney Eldridge ("Eldridge") was, at all relevant times, the Kenton County Clerk.[1] Danny Miles ("Miles") was the Chief Deputy Clerk from 2007 until his resignation in 2009.[2]

Plaintiffs allege that Miles, who conducted the office's day to day operations, created a hostile work environment by sexually harassing female employees.[3] Plaintiffs further allege that Johnson was transferred and later terminated for refusing Miles's sexual advances and that Feinauer was transferred for doing the same.

## A. Johnson

Johnson began her employment in the Liens Department of the Clerk's office. She testified that, during the first three months, Miles would tell her how pretty she looked, how he liked her outfits, and he would sit on the edge of her desk to talk to her. (Johnson Depo. 33)

---

[1] Plaintiff's Amended Complaint (Doc. 17) names Eldridge as a defendant "in his official capacity." (Am. Compl. ¶ 8) Because this is not an action under 42 U.S.C. § 1983, and because there is no individual liability under Title VII, the court presumes that the real defendant in interest is Kenton County, plaintiff's employer. (*See* Doc. 55)

[2] Miles resigned at Eldridge's request, although he denies any inappropriate behavior on his part. Miles was originally named a defendant in this action, but the court dismissed him by order dated May 23, 2011. (Doc. 55)

[3] Eldridge was not involved in the day-to-day office operations.

On August 12, 2008, Johnson was in Miles's office to discuss a work-related issue. Miles changed the subject to what Johnson had worn to work the previous day, which he had not seen but which he had been told violated the office's dress code. According to Johnson, Miles said:

> I'm sure you looked very sexy in the outfit that you had worn yesterday, and you can do me a slide show any time you want, but here in the office, that is not business appropriate.

(Johnson Depo. 60) Johnson testified that she then got up from his desk, and Miles said, "[Y]ou know, you're a very pretty girl." (Johnson Depo. 61) Johnson then left the office.

Johnson testified that she told her supervisor, Sheila Greene, that Miles made her uncomfortable. (Johnson Depo. 40) Greene told Johnson that Miles was good friends with Eldridge and that Eldridge would not do anything about Miles. (Johnson Depo. 42)

Johnson testified that Miles made similar comments about her appearance in June 2008. (Johnson Depo. 44)

Towards the end of August -- the end of her 90-day probationary period – Johnson was transferred from the Liens Department to the Automobile Department. (Johnson Depo. 65) This reassignment caused no change in Johnson's pay, hours, or benefits. (Johnson Depo. 66) Johnson

testified that she was told that she had been making mistakes, which she concedes, and that she was getting "one more chance." (Johnson Depo. 68) Johnson's probationary period was extended by one month.

During this time, Miles would pass through Johnson's work area while getting coffee and comment that Johnson's hair looked nice. (Johnson Depo. 75)

One day, Johnson and a co-worker, Tammy Gray, were sitting at Gray's desk, and Gray called Miles over to tell him how well Johnson was doing. (Johnson Depo. 78) Miles said, "You can't be first but you can be next." Johnson testified that she didn't know what he was talking about, and Miles said, "It means sex." (Johnson Depo. 79) Johnson responded, "Really, that's funny" and turned around and kept working. At the end of the day, she said, "I'll see you later, Danny." He said, "You'll be next." Johnson asked him what he said, and he said "never mind." (Johnson Depo. 80)

Finally, Johnson testified that Miles never touched or threatened her. (Johnson Depo. 42, 48)

Johnson's employment was terminated around November 15, 2008, for performance reasons. (Eldridge Depo. 11, 23-25) Eldridge testified that this decision was based on the complaints from more than a dozen employees on almost a

daily basis that Johnson was hard to work with, that she was "pretty much incompetent," and that she simply "didn't get" what they were trying to teach her. (Eldridge Depo. 10-15)

After she was fired, Johnson called Eldridge and told him about Miles's comments to her, and Eldridge said he had not been aware of them. (Johnson Depo. 165-66)

### B. <u>Feinauer</u>

Feinauer alleges that two to three times between January and March 2007, Miles asked her out and offered to show her a "good time." (Feinauer Depo. 26-27) Feinauer testified that she interpreted this comment to mean "more than just taking you out to dinner." (Feinauer Depo. 27) Feinauer never went out to dinner with Miles. (Feinauer Depo. 28)

Feinauer once went to lunch with a group of people that included Miles, but Miles did nothing during that lunch to make her feel uncomfortable. (Feinauer Depo. 28-29)

In approximately February or March 2007, a conversation with Miles occurred when he walked by Feinauer's desk. Miles asked Feinauer if she was married, and she said no, but she remarked that he was. (Feinauer Depo. 29-31, 34) Miles responded that it "made no

5

difference." (Feinauer Depo. 30) Other employees were nearby and overheard this conversation. (Feinauer Depo. 31)

Miles also told Feinauer "a couple of times" in the office that he was unhappy in his marriage, and he referred to his wife as "a bitch." (Feinauer Depo. 36-38)

Feinauer testified that, on one occasion in early 2007, Miles walked up behind her as she was sitting in the office, stroked her hair, and commented that it was soft. (Feinauer Depo. 43-44)

Miles also allegedly referred to Feinauer as "the Beautiful Bridget" when calling into the office. (Feinauer Depo. 46) However, Miles never said this directly to Feinauer. (Feinauer Depo. 46)

In May, 2007, Feinauer was transferred from the main branch of the Kenton County Clerk's office in Covington to the Independence, Kentucky branch. (Feinauer Depo. 35) Plaintiffs allege that this was a demotion as well as a transfer because it resulted in the removal of some supervisory duties that had recently been assigned to Feinauer by Eldridge and Miles. (Feinauer Depo. 35)

Finally, Feinauer testified that she did not attend the 2008 office Christmas party in order to avoid Miles. (Feinauer Depo. 48-49)

Plaintiffs filed this action on November 11, 2009, and an Amended Complaint was filed on March 29, 2010. (Doc. 17) Although the Amended Complaint asserts only a hostile environment claim, the parties' briefs on the pending motion for summary judgment assume that plaintiffs also assert *quid pro quo* harassment claims. Per the discussion at oral argument, the court has assumed that is the case. (Doc. 60 at 3)

### *Analysis*

A.  **Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The Committee Notes explain that the "standard for granting summary judgment remains unchanged" and that amendment "will not affect continuing development of the decisional law construing and applying" the standard. Fed. R. Civ. P. 56, Committee Notes at 31.

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

   B.   **Title VII**

Claims for sexual harassment brought under Title VII of the Civil Rights Act of 1964 are of two types: (1) hostile work environment, and (2) *quid pro quo*. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (citation omitted).

To maintain a hostile work environment claim, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable. *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotations omitted) (emphasis added).

"Conduct that is merely offensive, however, is not actionable." *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004) (citing *Harris*, 510 U.S. at 17). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotations omitted).

A hostile work environment has a subjective and objective component. The victim must subjectively believe

the environment to be abusive and the conduct must be so severe that a reasonable person would find it abusive. *Harris*, 510 U.S. at 21-22. The court considers a number of factors in determining whether a legally cognizable hostile work environment has been created, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

To establish a prima facie case of *quid pro quo* discrimination, a plaintiff must show:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 441 (6th Cir. 2008) (citation omitted).

### a. Johnson

#### 1. Hostile Environment

Johnson's allegations satisfy the first three criteria for establishing a hostile work environment. *See Clark*, 400 F.3d at 347. That is, she is a woman; she was

10

subjected to unwelcome harassment; and that harassment was based on her sex, inasmuch as Miles's comments regarding Johnson's appearance and the alleged oblique references to sex relate to her status as a female.

Further, the court assumes that Johnson found Miles's conduct to be subjectively offensive, as she reported to her supervisor that Miles made her feel "uncomfortable." (Johnson Depo. 40)

Nonetheless, Johnson's claim fails at the summary judgment stage because the incidents she alleges are not severe or pervasive enough for a reasonable jury to conclude that Miles created an objectively hostile work environment actionable under Title VII.

This court must look to the totality of the circumstances to determine whether the conduct satisfies the objective component of this analysis. *Harris*, 510 U.S. at 23. Miles's conduct towards Johnson over the six months that she was employed comprises: comments about her being attractive and her clothing; the comment about her doing a "slide show" for him; the comment to Johnson and Gray that "you can't be first, but you can be next," and the follow up comment to Johnson the same day that "you'll be next."

Without doubt, these comments are gauche and inappropriate to the workplace. However, when viewed in

11

their totality, they are insufficient to establish a hostile work environment. *See id.* Miles's comments were sporadic and, in the scheme of things, relatively mild, constituting "mere offensive utterances" as discussed in *Harris*. *Id*.[4] Further, there is no allegation of threats or physical contact.

In sum, even viewed in Johnson's favor, the alleged conduct raises no triable issue on her claim for hostile environment sexual harassment. *See, e.g., Galeski v. City of Dearborn*, No. 10-1256, 2011 WL 3568888, at *6 (6th Cir. Aug. 9, 2011) (affirming summary judgment on same-sex hostile environment claim where harasser complimented plaintiff on his eyes and hair; told him of his pornography collection; told him a story about when he had become sexually aroused; and told him he could get plaintiff a prostitute).

---

[4] A case cited by plaintiffs illustrates this relativity. *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009) (summary judgment inappropriate on hostile environment claim where plaintiff testified that co-workers referred to female customers and employees as bitches, whores, sluts, dykes, and cunts; they viewed and discussed obscene photographs and pornographic magazines in the workplace; they traded sexual jokes and engaged in graphic discussions about their sexual liaisons, fantasies and preferences in her presence on a daily basis; one male co-worker taunted her while wearing nothing but a towel around his waist; and they referred to plaintiff as a "heifer" with "milking udders" and "moo'ed" when she walked by).

**2. Quid Pro Quo**

Johnson's *quid pro quo* claim also fails as a matter of law. Initially, it is questionable that Miles's remarks could reasonably be construed as conditioning any job benefit or detriment on Johnson's reaction or submission to them. Assuming for purposes of this motion, however, that this element is satisfied, the claim nonetheless fails.

Johnson's attempt to base her claim on her transfer from the Liens Department to the Automobile Department is without merit because, as she conceded during oral argument, that intra-office transfer does not constitute a tangible job detriment. (Doc. 60 at 12-13)

Johnson's termination, in contrast, does constitute a tangible job detriment. However, the "fourth prong of the test for *quid pro quo* harassment requires a connection between the plaintiff's reaction to unwelcome advances and job-related consequences of that reaction." *Davis v. McNea*, No. 96-5272, 1997 WL 123745, at *5 (6th Cir. Mar. 18, 1997) (citation omitted).

Here, there is no evidence of a causal connection between Johnson's termination and Miles's remarks because: (1) it is undisputed that Eldridge had no knowledge of Miles's alleged conduct at the time that he made the decision to terminate Johnson's employment, and (2) it is

undisputed that Eldridge's decision was based on "almost daily" complaints from more than a dozen employees of the clerk's office, only one of whom was Miles. (Eldridge Depo. 10-15) Thus, even if Miles harbored discriminatory animus based on Johnson's failure to respond positively to his alleged advances, there is no evidence that any such animus infected Eldridge's decisionmaking.

The Supreme Court's decision in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), does not require a different result. The multitude of the complaints from employees other than Miles regarding Johnson's performance alone distinguishes the case from one where an ultimate decision is influenced by the allegedly unlawful motive of a lower-level supervisor. Moreover, *Staub* is further distinguishable because there the plaintiff proffered evidence that lower-level supervisors intentionally made a false accusation against him which ultimately led to his termination. *Id.* at 1189. Here, there is no allegation or evidence that Miles made false statements about Johnson's performance in order to have her terminated. Indeed, Johnson admitted to making at least some mistakes (Johnson Depo. 68), and her supervisor Sheila Greene (who testified she was a friend to Johnson) testified that Johnson was not "catching on as quickly" as she thought she should, that

she had to help her out a lot, and that Johnson made errors and continued to show problems in doing her job correctly. (Greene Depo. 16, 31-33)

Therefore, plaintiff cannot show any causal relationship between her refusal to submit to alleged sexual overtures by Miles and the termination of her employment, and she thus raises no triable issue on her claim for *quid pro quo* harassment. *See Idusuyi v. Tennessee Dep't of Children's Serv.*, 30 F. App'x 398, 402 (6th Cir. 2002).

   **b.   Feinauer**

      **1.   Hostile Environment**

Feinauer also meets the first three criteria for showing a hostile work environment. *Clark*, 400 F.3d at 347. She is a woman, she was harassed by Miles, and Miles's conduct, such as asking her out on dates, was based on her sex. *Id.* Again, the issue is whether a reasonable jury could conclude that an actionable hostile work environment existed.

Again, this Court must look at the totality of the circumstances to determine whether the work environment was objectively offensive. *Harris*, 510 U.S. at 23. Construing the evidence in Feinauer's favor, it shows that Miles asked Feinauer on dates and offered to show her "a good time"; he

told Feinauer that it did not matter that he was married and referred to his wife as a "bitch"; he once touched Feinauer's hair and told her it was soft; and he referred to her as the "Beautiful Bridget" when calling in to the office.

These incidents, while offensive to Feinauer, are not sufficiently severe or pervasive to satisfy the *Harris* standard. The number of incidents was relatively few, and the comments, while inappropriate, were not especially severe. Further, the one incident of physical contact was similarly mild. *See Prechtel v. Kellogg's d/b/a Kellogg's Snacks*, No. 3:05CV-753-H, 2007 WL 1610575, at * 3 (W.D. Ky. May 31, 2007) (holding that a handful of inappropriate comments at work-related events, a sexually-tinged comment at work, and an attempt to touch plaintiff were not sufficiently severe or pervasive), *aff'd per curiam*, 270 F. App'x 379 (6th Cir. 2008). *See also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464-65 (6th Cir. 2000) (holding that allegations that a supervisor "rubbed plaintiff's shoulder, grabbed his buttocks, and issued two sexually-laden invitations for the plaintiff to join the supervisor in a whirlpool and a swimming pool" were not sufficiently severe or pervasive so as to constitute a hostile work environment).

Finally, Feinauer testified that, while Miles's conduct made her uncomfortable, it did not interfere with her ability to do her job or affect her work performance. (Feinauer Depo. 99) This testimony further supports the conclusion that the conduct falls outside the reach of Title VII. *See Harris*, 510 U.S. at 23.

Therefore, defendant is entitled to summary judgment on Feinauer's hostile environment claim.

### 2. Quid Pro Quo

As discussed above, to raise a triable issue on her *quid pro* quo harassment claim, Feinauer must show that her submission to Miles's unwelcome advances was an express or implied condition for receiving job benefits or that her refusal to submit resulted in a tangible job detriment.

Miles's alleged sexual advance to Feinauer was his offer to take her on dates and show her "a good time." The existence of expressed or implied conditioning based on Feinauer's acceptance of these advances is tenuous, but for purposes of this motion, the court assumes this element is satisfied.

However, this claim fails because Feinauer, who is still employed, cannot show that she suffered any tangible job detriment. Although she argues that her transfer from the Covington office to the Independence office was an

adverse action, she concedes that this transfer caused her no loss of pay or benefits. (Doc. 60 at 14)

This court has previously held that a lateral transfer, with no change in duties and no loss in pay or benefits, but which required a plaintiff to drive an additional twenty minutes to work does not constitute an adverse employment action as a matter of law. *See Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, No. 90-5453, 1991 WL 11255 (6th Cir. Feb. 1, 1991).[5]

Therefore, Feinauer cannot make out an essential element of her claim for *quid pro quo* harassment.

Therefore, having heard the parties, and the court being otherwise sufficiently advised,

---

[5] The court takes judicial notice that the distance between Covington, Kentucky and Independence, Kentucky is approximately 10-15 miles.

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. 46) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 2nd day of September, 2011.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge